UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILKB, LLC,<br>1844 Landsdowne Avenue<br>Merrick, NY 11710<br><br>             Plaintiff,<br>v.<br><br>JIM HARRER<br>6601 Cascade Avenue<br>Gig Harbor, Washington 98335<br><br>and<br><br>BEST HOUR FITNESS, INC.,<br>6601 Cascade Avenue<br>Gig Harbor, Washington 98335<br><br>  Serve: r/a Jim Harrer<br>     6601 Cascade Avenue<br>     Gig Harbor, Washington 98335<br><br>              Defendants. | Civil Action No. |

**COMPLAINT**

Plaintiff ILKB, LLC ("Plaintiff" or "ILKB"), by counsel Gordon Rees Scully Mansukhani LLP, and for its Complaint against the Defendants, Jim Harrer ("Harrer") and Best Hour Fitness, Inc. ("Best Hour") state as follows:

**NATURE OF ACTION**

1. This is an action against Harrer and Best Hour (together referred to as the "Defendants") to protect the iLoveKickboxing.com franchise system from Defendants' egregious conduct which, at base, is an attempt by Harrer to line his own pockets at the expense of ILKB and the other franchisees in the system who continue comply with the system's operational requirements in good faith. The causes of action are for breach of contract, misappropriation of

1

trade secrets, tortious interference with contractual relations, tortious interference with prospective economic relations, unfair competition, and injunctive relief, arising from Defendants' conduct in violating their contractual, common law, and statutory obligations.

2.  ILKB brings this action to protect the ILKB system and to hold Defendants, the operator and owner of two ILKB-franchised studios in the State of Washington, accountable for breaches of their contractual promises not-to-compete with ILKB or divert ILKB franchisees away from the system and violations of their common law and statutory obligations to refrain from misappropriating ILKB's trade secrets, interfering with the business relationships between ILKB and its franchisees, and unfairly competing with ILKB—all for the purpose of converting dozens of ILKB's franchisees into prospects for Defendants' competing "Best Hour Fitness" brand. Among other things, Defendants' tortious interference involves attempts to induce dozens of ILKB franchisees to breach their agreements with ILKB and otherwise disregard ILKB's system standards.

3.  ILKB has invested significant time and money in building a franchise system of kickboxing fitness studios. The result is ILKB's innovative approach to fitness, marketing, and converting prospective leads into loyal and committed members. As in many franchise systems, protecting the brand and the integrity of the system are paramount concerns for the survival and success of the system as a whole.

4.  ILKB seeks damages as described more fully below.

5.  ILKB also intends to seek preliminary and permanent injunctive relief due to the irreparable harm Defendants' efforts will, if left unchecked, visit upon ILKB and its franchise system.

6.  The relief requested herein is necessary to enforce ILKB's system standards and

protect the integrity of the system against a rogue franchisee who seems determined to create his own competing system through misappropriation of ILKB's business partners and proprietary systems.

## THE PARTIES

7. Plaintiff ILKB is organized under the laws of the State of New York with its principal place of business at 1844 Landsdowne Avenue, Merrick, NY 11710. ILKB's sole member is Michael Parrella, a natural person who resides in Nassau County, New York. ILKB is the franchisor of iLoveKickboxing.com, a franchise of physical fitness studios focused on kickboxing. The ILKB franchise system consists of over 200 studios operating throughout the United States and Canada.

8. Defendant Harrer is a natural person who, upon information and belief, is a citizen of Washington, residing at 6601 Cascade Avenue, Gig Harbor, Washington 98335. Harrer is a long-time acquaintance of Michael Parrella, ILKB's founder and Chief Executive Officer, and has been an ILKB franchisee since January 2016.

9. Upon information and belief, Defendant Best Hour f/k/a J.A. Harrer, Inc. is organized under the laws of the State of Washington with its principal place of business at 6601 Cascade Avenue, Gig Harbor, Washington 98335. It operates two ILKB kickboxing studios in the State of Washington, including outlets in Kent and Federal Way, Washington.

## SUBJECT MATTER JURISDICTION

10. Subject matter jurisdiction in this Court exists under 28 U.S.C. § 1332. Plaintiff is a citizen of New York. Defendants are citizens of Washington. There is complete diversity of citizenship between ILKB and Defendants, and the amount in controversy far exceeds $75,000, exclusive of interests and costs.

11. Subject matter jurisdiction in this Court also exists under 18 U.S.C. §§ 1838(a) and

3231, and 28 U.S.C. § 1331, as the Third Cause of Action arises out of the Defendants violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*.  Subject matter jurisdiction over the remaining claims also exists pursuant to 28 U.S.C. § 1367 because those claims for relief are so related to the Third Cause of Action as to form part of the same case or controversy.

## PERSONAL JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants pursuant to New York's long arm statute, C.P.L.R. § 302(a)(1) because they transacted business in the State of New York and this action arises out of that business transaction.

13.     This Court also has personal jurisdiction over Defendants because each consented and submitted to personal jurisdiction in either New York or Nassau County, New York pursuant to a certain franchise agreement effective January 6, 2016.

14.     Venue is this Court is appropriate under 28 U.S.C. § 1391(a)(3).

15.     In addition, and pursuant to a franchise agreement effective January 6, 2016 to which each Defendant is a party, Defendants waived any objection to the laying of venue in this Court. The franchise agreement and all related matters are expressly governed by the laws of New York, without regard to the principles of conflicts of laws, and provides that any dispute between ILKB and defendants shall take place in New York.

## THE DEFENDANTS' FRANCHISE AGREEMENT

16.     The relationships between ILKB and its franchisees are governed by franchise agreements, each of which contain essentially the same terms and provisions and are intended to govern each franchisee's operation of a single iLoveKickboxing.com studio within a specified geographic territory.

17.     Because many franchisees in the system are business entities, important provisions of the franchise agreements also apply to "Principal Equity Owners."

18. Some franchisees also have a multi-outlet agreement (an "MOA") with ILKB. The MOA grants those franchisees the right to develop additional studios within a franchisee's territory.

19. Defendants and ILKB are parties to a franchise agreement effective January 6, 2016 (the "Franchise Agreement"), as well as an MOA effective January 6, 2016, which granted Defendants the right to develop a total of five studios in the Seattle, Washington area (the "Territory").

20. Pursuant to the Franchise Agreement and the MOA, Defendants opened two ILKB franchised studios within the Territory. Defendants opened their first ILKB kickboxing studio in Federal Way, Washington on or before January 2017. Defendants opened their second kickboxing studio in Kent, Washington on or before January 6, 2018.

21. Harrer is a Principal Equity Owner of Best Hour and, therefore, is bound by certain contractual provisions specified in the Franchise Agreement.

22. Among other things, and to protect ILKB's franchise business, trade secrets, and confidential information, including without limitation information regarding the "operational, sales, promotional, and marketing methods and techniques of the System," Article XI of the Franchise Agreement restricts Defendants from certain in-term activities which might harm ILKB and its franchise system.

23. First, pursuant to Section 11.1(a), Defendants promised not to "operate, manage, own, assist or hold an interest in (direct or indirect as an employee, officer, director, shareholder, partner or otherwise), or engage in, any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business."

24. Second, pursuant to Section 11.1(b), Defendants promised not to "(i) divert or

attempt to divert any business or customer of the Franchised Business to any competitor, by direct or indirect inducement or otherwise, [or] (ii) do or perform, directly or indirectly, any other acts injurious or prejudicial to the goodwill associated with the Marks or the System. . . ."

25. Defendants, pursuant to Article VIII, also agreed to operate in conformity with the methods and standards required of all franchisees. Defendants, like all other ILKB franchisees, are aware that other franchisees in the system are similarly bound.

## DEFENDANTS' TRADE SECRETS AND CONFIDENTIAL INFORMATION

26. At considerable effort and expense, ILKB has developed confidential and proprietary information concerning the marketing and sales of its franchises. Among other things, ILKB has conceived and developed various service marks and trade dress, business plans, service delivery strategies, training materials, cost models and budgets, and lead generation systems which are highly proprietary to ILKB. ILKB's trade secrets are at least partly contained within its Confidential Operations Manual.

27. ILKB expends significant resources, in terms of capital investment and time, to develop customized marketing strategies to bolster the value of the iLoveKickboxing.com brand and sell franchises. For this reason, ILKB takes special precautions to maintain the confidentiality of its confidential and proprietary information.

28. Over the course of their franchise relationship with ILKB, Defendants had complete access to and, upon information and belief, did access, significant quantities of information related to ILKB franchise model, which included marketing materials, methods, and opportunities; potential revenues associated with those opportunities, franchisee owner and contact information; and ILKB's approach to meeting the needs and requirements of its franchisees.

29. ILKB carefully safeguards its confidential and proprietary business information by, among other things, limiting access to such information to existing franchisees, maintaining

6

computer security devices, and requiring franchisees to agree that they will not disclose confidential information to anyone outside of ILKB and its franchise system pursuant to Section 9.3 of the franchise agreements.

30. Defendants were entrusted with ILKB's highly-confidential and trade secret information.

31. Defendants participated in regular meetings and trainings between ILKB and franchisees, which included discussions about planning, services, cost information, profit margins, sales training, strategic decisions with respect to ILKB's franchise system, and the future direction and long term growth challenges and opportunities of ILKB. Defendants had access to ILKB's franchisees, which included contact information for owners, the identification of new market opportunities, potential revenues associated with those opportunities, specific needs and requirements, and ILKB's approach to meeting franchisee needs and requirements. Defendants received confidential and proprietary information only disclosed to ILKB's most-trusted and successful franchisees and not shared with other employees, clients, prospective clients, or third-parties. Defendants, by virtue of the Franchise Agreement, gained access to this information and, pursuant to Section 9.3, promised to keep it confidential and only use it for ILKB business.

32. Through interaction with ILKB personnel and executives, including Mr. Parella, Defendants have obtained a great deal of knowledge with respect to the personal fitness marketplace and marketing strategies which are proprietary to ILKB and were developed by ILKB for the sole benefit of itself and its franchisees.

33. The above-mentioned information is not generally known and difficult to obtain.

**DEFENDANTS' CONTRACTUAL BREACHES AND INTENTIONAL INTERFERENCE WITH THE ILKB FRANCHISE SYSTEM**

34. Defendants, benefiting from the goodwill associated with ILKB's service marks

and trade dress, and employing ILKB's trade secrets and confidential information, were very successful in the opening and operation of their first studio in Federal Way, Washington.

35. In fact, the Federal Way studio was one of the most successful amongst all ILKB franchisees and it generated in excess of one million dollars in revenue in its first full year of operation. In public-facing marketing, Defendants bragged that their Federal Way studio was "named the number one fitness kickboxing studio in the nation." Defendants also represented to the public that the Kent studio "quickly became the fastest growing iLoveKickboxing location in history."

36. Defendants did not greet their success with loyalty or fidelity to ILKB. Instead, Defendants embarked upon a surreptitious path, creating a competing Best Hour Fitness brand, coopting the trade secrets and confidential information and relationships borne from Defendants status as an ILKB franchisee, and diverting and attempting to divert other ILKB franchisees away from the ILKB franchise system for Defendants' sole financial gain.

37. On or before March 2018, Harrer created the Best Hour Fitness brand. Upon information and belief, the Best Hour Fitness brand consists of word marks, namely Best Hour, designed to emphasize physical fitness as the "Best Hour" of a person's day. It is displayed in conjunction with photographs and videos posted on social media and directed toward potential iLoveKickboxing.com members, including, without limitation, images which display ILKB's service marks and trade dress in conjunction with Best Hour Fitness marks. Defendants frequently use the hashtag #BestHour fitness on social media posts to promote the brand and, because Defendants are also ILKB franchisees, the posts frequently confuse the public into thinking that ILKB either endorses the brand or that Best Hour Fitness is the origin of the kickboxing studio services provided at ILKB franchised locations in Federal Way and Kent, Washington.

8

38. Despite the fact that Best Hour and Harrer are parties to the Franchise Agreement with ILKB, Harrer describes his role at Best Hour without reference to ILKB. In fact, on his public LinkedIn page, Harrer describes himself as an independent consultant "[h]elping fitness studios create a community culture where members consistently call their workouts the Best Hour of their day. Our systems and processes focus on culture and community development that transforms boutique fitness studios into fitness destination (sic) that attracts new members and member retention. Our solutions include proven systems and processes, best practices and coaching services for owners, manager, trainers, and instructors." *See* Jim Harrer, https://www.linkedin.com/in/jimharrer (last accessed Nov. 11, 2019).

39. On November 26, 2018, Harrer amended Best Hour's articles of incorporation to change its name from the original J.A. Harrer, Inc. to Best Hour Fitness, Inc.

40. On or before December 20, 2018, Harrer created a private Facebook group called #BestHour ILKB Mastermind. The stated purpose of the group is as follows: "This Mastermind group is for ILKB owners who want to learn how to be a successful small business owner running an ILKB Franchise. We will teach you how to duplicate our BestHour System and hit other topics like Advertising & Marketing, Teaching Classes, membership development, manager development, instructor development and more."

41. ILKB already provides its franchisees, including Best Hour, with materials and training which are germane to the very same issues Harrer addresses through his private Facebook group.

42. Upon information and belief, and by means of, at the very least, the #BestHour ILKB Mastermind group, Harrer uses his knowledge of ILKB's highly-confidential information and trade secrets to lure ILKB franchisees into a secret forum within which, explicitly and

implicitly, he attempts to convince other franchisees to operate in a manner that is not in conformance with the operational requirements of the franchise agreement and, in many instances, is a clear and material breach of them.

43. Defendants took and continue to take incremental steps to leverage their connections with other ILKB franchisees and knowledge of ILKB's efforts to perfect its franchise system, all with the ultimate purpose of inducing other franchisees to leave the ILKB franchise system in favor of Defendants' competing Best Hour Fitness brand.

44. For example, Defendants employ co-branding, advertising, and promotional efforts to promote the Best Hour Fitness brand at the expenses of ILKB. ILKB recently discovered Defendants' various breaches and, on September 18 and October 4, 2019, provided Defendants with notice, of various breaches of the Franchise Agreement relating to such efforts. Those defaults were material and, in many cases, remain uncured.

45. In the case of co-branding and advertising, Defendants constructed and operated a Best Hour Fitness branded websites at the URLs http://www.besthourfitness.com and http://www.ilkbwa.com (and related web pages under the same domain name) and a "Best Hour Fitness" Facebook page, each of which represented to the public that Best Hour Fitness is a distinct brand, is a parent of ILKB franchisees, and as a parent company operated the iLoveKickboxing.com studios in Federal Way and Kent, Washington.

46. Those advertisements, both in digital format and printed on merchandise, such as tote bags that were given to ILKB members, are demonstrably false.

47. ILKB has no parent company and each of its franchisees, including Defendant, is independently owned and operated.

48. Further, the advertisements infringed upon ILKB's rights to its service marks and

violated the operational requirements set forth in Article VIII of the Franchise Agreement.

49. In the case of advertising, Defendants defaulted with respect to the marketing and advertising requirements of Section 4.3 of the Franchise Agreement by creating their own marketing campaigns centered upon the "Best Hour Fitness" brand without obtaining ILKB approval. ILKB has an interest in enforcing its rights to oversee and approve local advertising because of its right to protect its brand as well as its right to collect all trial-membership fees pursuant to Section 4.4 of the Franchise Agreement.

50. The Defendants' unapproved marketing and advertising efforts, of which ILKB demanded Defendants cease and desist, have infiltrated the ILKB franchise system and are now being implemented by other franchisees. For instance, the ILKB franchisee located in San Jose, California has posted advertisements on social media which use the hashtags #BestHour in conjunction with the hashtag #ilkb. *See* https://www.youtube.com/watch?v=8IQvGaqh5EU (last accessed Nov. 12, 2019).

51. Upon information and belief, Defendants utilize their private Facebook group to invite ILKB franchisees to participate in secret discussions which are designed to undermine confidence in ILKB's franchise system. Over the past few months, Defendants have solicited more than fifty such ILKB franchisees to become part of the group. They have used the forum to organize resistance to ILKB initiatives, such as ILKB's rollout of a new point of sale system called MindBody, ILKB's exclusive right to offer free trial promotions and organize Internet-based marketing, and, most recently, ILKB's "New Day" offering aimed at consolidating and strengthening the ILKB franchise system through various initiatives, including royalty reductions for participating franchisees.

52. On information and belief, these incremental steps have a clear and malicious

purpose. They are designed to convince ILKB franchisees to lose faith in the ILKB franchise system, reject ILKB's new initiatives, and ultimately leave the ILKB franchise system in favor of the Best Hour Fitness brand being developed by Defendants.

53. Perhaps motivated by ILKB's "New Day" offering—and the threat of such an initiative upon Harrer's efforts to develop a competing system—Defendants' tortious activity has increased in recent weeks. For several weeks, Defendant have been soliciting feedback from the #BestHour ILKB Mastermind Facebook group with respect to an in-person meeting. Although disclaimed by Harrer in his posts, Harrer has taken the lead in organizing this meeting and canvasing attendees to determine what topics he should concentrate on to lure ILKB franchisees away.

54. The proposed topics appear to be a springboard for what appears to be Harrer's ultimate purpose, to achieve a critical mass of ILKB franchisees willing to breach their contractual obligations to ILKB, forgo prospective changes to those contractual obligations, and convert ILKB franchisees into Best Hour Fitness clients, business partners, and/or franchisees.

55. Upon information and belief, this in-person meeting is to take place in Las Vegas, Nevada on Wednesday, November 13, 2019 and will be attended by dozens of ILKB franchisees.

56. Defendants' unique knowledge of ILKB's confidential information and strategies will give Defendants a distinctly unfair advantage in competing with ILKB for business. Unlawfully possessing ILKB's proprietary information, such as that described above, would enable and have enabled Defendants to make decisions about their own plans that take into account ILKB's confidential business information.

57. Defendants—as a result of their status as ILKB franchisees and manifestly unlawful actions—are in a unique position to improperly take advantage of the goodwill

that ILKB has invested a significant amount of time and resources developing and cultivating with its franchisees.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

58.  ILKB repeats and realleges the allegations contained in paragraphs 1 through 57 of this Complaint as if set forth fully herein.

59.  Pursuant to the terms of the Franchise Agreement, Harrer and Best Hour are prohibited from, inter alia, (a) directly or indirectly operating, managing, owning, assisting, or holding an interest in any competing business selling goods or offering services equivalent to ILKB Services and Products or the Franchised Business; (b) diverting or attempting to divert any business or customer of the Franchised Business to any competitor; or (c) do or perform any act injurious or prejudicial to the goodwill associated with the Marks or the franchise system.

60.  The in-term restrictive covenants are reasonable and necessary for the protection of ILKB's legitimate interest in its trade secrets and confidential information and the integrity of its franchise system.

61.  Defendants have breached the terms of the Franchise Agreement by creating and operating a franchise system using the "Best Hour Fitness" brand, diverting customers and other ILKB franchisees toward the competing enterprise, and otherwise taking action injurious to the goodwill associated with the ILKB service marks, trade dress, and franchise system.

62.  If Defendants are not enjoined from joining a directly competitive business, from violating their Agreements, and from using or disclosing ILKB's trade secrets and other confidential proprietary information, ILKB will suffer immediate and irreparable harm to its business and goodwill, including but not limited to: loss of business and commercial reputation, goodwill, business and economic opportunities, loss of use of its own property, and loss of use and

disclosure to a competitor of this valuable confidential and proprietary information.

63. In addition, as a proximate and direct result of defendants' actions, ILKB has and will continue to suffer substantial money damages, including without limitation direct, incidental, consequential, and liquidated damages.

## SECOND CAUSE OF ACTION
### (Misappropriation of Trade Secrets under the Common Law of the State of New York)

64. ILKB repeats and realleges the allegations contained in paragraphs 1 through 63 of this Complaint as if set forth fully herein.

65. By virtue of their contractual relationships with ILKB, ILKB gave defendants access to trade secrets and confidential and proprietary information ("Trade Secret Information")—information that is valuable to ILKB's franchise model and gives ILKB an advantage over competitors.

66. Defendants have a common law duty prohibiting them from using Trade Secret Information procured during their franchise relationship with ILKB for any purpose other than for the benefit of franchise and, by extension, ILKB as franchisor.

67. Defendants have misappropriated ILKB's Trade Secret Information, upon information and belief, for their own pecuniary gain.

68. ILKB is entitled to preliminary and permanent injunctive relief.

69. Unless injunctive relief is granted, Defendants will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

70. In addition to giving rise to injunctive relief, the Defendants' misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer substantial damages, including without limitation direct, incidental, and consequential

damages, in an amount to be established at trial.

71. Defendants' misappropriation of ILKB's Trade Secret Information was intentional, malicious, unlawful, unfair and otherwise improper, thereby making punitive damages appropriate.

## THIRD CAUSE OF ACTION
### (Misappropriation of Trade Secrets under the Statutory Laws of the United States)

72. ILKB repeats and realleges the allegations contained in paragraphs 1 through 71 of this Complaint as if set forth fully herein.

73. The Trade Secret Information obtained by defendants relates to ILKB's business and services that are maintained and provided in interstate commerce.

74. The Trade Secret Information obtained by defendants is a "trade secret" within the meaning of 18 U.S.C. § 1839(3) because, *inter alia*, it is secret and of value as a result of not being generally known as set forth above, and ILKB takes and has taken measures to prevent the secrets from becoming available to persons other than those selected by ILKB to have access thereto.

75. Defendants have misappropriated ILKB's Trade Secret Information, upon information and belief, for their own pecuniary gain.

76. As a result of the defendants' misappropriation of ILKB's Trade Secret Information, defendants have and continue to violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

77. Pursuant to Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A), ILKB is entitled to preliminary and permanent injunctive relief.

78. Unless injunctive relief is granted, Defendants will continue to misappropriate and benefit from misappropriation of the Trade Secret Information and will continue to cause further irreparable injury to ILKB.

79. In addition to giving rise to injunctive relief, the Defendants' misappropriation of ILKB's Trade Secret Information has caused ILKB to suffer and will continue to cause ILKB to suffer actual damages in an amount to be established at trial.

80. By virtue of the Defendants' bad faith and willful and malicious misappropriation of ILKB's Trade Secret Information, ILKB is entitled to an award for its damages, reasonable royalties, exemplary damages in an amount up to two times awarded damages and reasonable attorney's fees, as provided for by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b)(3)(B)-(D).

## FOURTH CAUSE OF ACTION
(Tortious Interference with Contract, Business Relations, and Prospective Economic Relations)

81. ILKB repeats and realleges the allegations contained in paragraphs 1 through 80 of this Complaint as if set forth fully herein.

82. In their position as trusted and key franchisees of ILKB, Defendants were aware that ILKB has/had established contractual, business, and/or prospective relationships with hundreds of franchisees.

83. Despite this knowledge, defendants have impeded and are attempting to impede ILKB's ability to continue and/or initiate business relationships with these franchisees by forming and promoting a competing franchise system under the Best Hour fitness brand, promoting that system to ILKB franchisees, inducing or encouraging franchisees to breach various provisions of their franchise agreements and others disregard certain operational requirements and systems standards, fomenting and organizing resistance to ILKB's New Day Initiative, and secretly scheduling a meeting in Las Vegas, Nevada on November 13, 2019 with dozens of existing ILKB franchisees in an effort to convert ILKB's franchise relationships into contractual opportunities solely for the benefit of Defendants' new Best Hour fitness brand.

84. Defendants' acted improperly in interfering with ILKB's contractual relationships

with its franchisees.

85. ILKB is entitled to injunctive relief to prevent defendants' continued threatened or actual interference with the contractual, business and prospective relationships of ILKB.

86. ILKB has sustained losses and damages as a direct and proximate result of defendants' wrongful actions described herein in an amount to be determined at trial.

87. The means used by defendants in effecting this interference were intentional, malicious, unlawful, unfair and otherwise improper, thereby making punitive damages appropriate.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition)**

88. ILKB repeats and realleges the allegations contained in paragraphs 1 through 87 of this Complaint as if set forth fully herein.

89. Defendants have engaged in conduct intended to undermine, destroy and misappropriate the business of ILKB by using ILKB's Trade Secret Information to compete unfairly with ILKB in violation of defendants' contractual obligations and the common-law.

90. Defendants' conduct constitutes common law unfair competition, and unless they are enjoined, ILKB will suffer irreparable injury for which it is no adequate remedy at law.

91. In addition, as a proximate and direct result of defendants' actions, ILKB has and will continue to suffer substantial money damages, including without limitation direct, incidental, and consequential damages.

**SIXTH CAUSE OF ACTION**
**(Preliminary and Permanent Injunctive relief)**

92. ILKB repeats and realleges the allegations contained in paragraphs 1 through 91 of this Complaint as if set forth fully herein.

93. For all the foregoing reasons, and ass monetary damages are inadequate to fully

compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer relationships, and future profits resulting from Defendants' wrongful acts, preliminary and permanent injunctive relief barring Defendants, their servants, agents, employees, and all persons acting in concert with them from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement, ILKB prays for a preliminary and permanent injunction as set forth in Paragraph A of its prayer for relief.

## **PRAYER FOR RELIEF**

**WHEREFORE, ILKB** demands judgment as follows:

A. As monetary damages are inadequate to fully compensate ILKB for the incalculable loss of its competitive edge, goodwill, customer relationships, and future profits resulting from Defendants' wrongful acts, preliminary and permanent injunctive relief barring Defendants, their servants, agents, employees, and all persons acting in concert with them from engaging in activities which are in direct violation of the in-term non-competition and anti-diversion clauses in the Franchise Agreement including (i) offering, advertising, marketing or otherwise engaging in competitive services against ILKB for the duration of the Franchise Agreement and pursuant to the post-termination provisions specified under Section 11.2; (ii) using ILKB's trade secrets and confidential and proprietary information in a manner which would result in harm to ILKB and its franchise system; (iii) soliciting, directly or indirectly, any ILKB franchisees or prospects for benefit of the Best Hour Fitness brand; (iv) inducing or encouraging any ILKB franchisees to breach their respective franchise agreements with ILKB, including without limitation those provisions designed to preserve and maintain the uniformity of the system (Article VIII).

B. An award of damages in an amount sufficient to compensate it for any ascertainable and calculable damages, losses, and/or loss of revenues and opportunities

occasioned by Defendants' wrongful conduct as described herein, including, but not limited to, payment of past and future lost royalties occasioned by Defendants' breach of contract, direct and indirect damages for misappropriation of trade secrets and confidential and proprietary information, and damages for tortious interference and unfair competition;

  C. An award of pre-judgment interest on all such sums awarded;

  D. An award of punitive and exemplary damages and reasonable royalties as the Court may deem appropriate; and

  E. An award of costs, disbursements and attorneys' fees incurred in connection with this action, as well as any other and further relief as the Court may deem just, proper, and equitable.

Dated: October 1, 2020       Respectfully submitted,

             **GORDON REES SCULLY MANSUKHANI, LLP**
             *Counsel for ILKB, LLC*


             */s/Peter G. Siachos*
             Peter G. Siachos
             1 Battery Park Plaza, 28th Floor
             New York, New York, 10004
             T: (212) 269-5500
             F: (212) 269-5505
             psiachos@grsm.com